IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| YEVGENIY PILIPONSKIY, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-25-0802 |
| WAL-MART STORES EAST, LP, | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * *

**MEMORANDUM AND ORDER**

Plaintiff Yevgeniy Piliponskiy brought suit against his former employer, Wal-Mart Stores East LP. (*See generally* ECF No. 1.) Defendant has filed a Motion to Dismiss, seeking the dismissal of three of the five claims brought by Plaintiff. (ECF No. 5.) For the reasons that follow, the Motion to Dismiss will be granted.

### I.  *Factual Background*

Plaintiff, who is Jewish, was offered a job at Walmart as a pharmacist in January 2015. (ECF No. 1 ¶¶ 15, 23.) At the request of his supervisor, Adjoa Manu, Plaintiff provided his hours of availability. (*Id.* ¶ 24.) Plaintiff alleges that "[t]he requested hours fully comported with the job offer, were not overly burdensome to defendant, and reflected plaintiff's Jewish Orthodox religion." (*Id.*) Manu "became visibly agitated and angry, recognizing that his available hours reflected time restrictions of the Jewish religion." (*Id.* ¶ 25.) Plaintiff began working on January 23, 2015. (*Id.* ¶ 26.) The next day, "plaintiff reminded defendant of his religious accommodations" and on January 28, 2015, "Manu wrongfully and outrageously accused plaintiff of having 'hidden' his Jewish religion" and "[t]he implication was that, had she known plaintiff was Jewish, she wouldn't have hired him." (*Id.* ¶ 27.)

In February 2015, Plaintiff entered his hours of availability into Defendant's scheduling system, and "[w]ithout explanation[,] defendant deleted all [of] plaintiff's religious accommodations" from the system. (*Id.* ¶ 29.)

In March and April of 2015, Anthony Woanya, the pharmacy manager, "made derogatory remarks offensive to plaintiff's religious dietary restrictions and targeting plaintiff with belittling laughter that included other employees as jokes were made about plaintiff's Jewish religion." (*Id.* ¶ 30.) In April 2015, Manu "made derogatory remarks about Judaism, attacked and denigrated the religion and demanded that plaintiff defend basic beliefs and tenets of Judaism and basic writings of his Jewish religion" and she "advised him that she found Jewish religious beliefs to be objectionable." (*Id.* ¶ 31.)

Around April 20, 2015, Defendant "unilaterally changed plaintiff's classification from an 80-hour salaried position, removed him from his store-placement, removed his managerial training modules, which are [a] prerequisite to promotion, and decreased his hours from 80 to 56 per pay period." (*Id.* ¶ 32.) Plaintiff's salaried position was given to a non-Jewish pharmacist. (*Id.* ¶ 34.) On May 9, 2015, Manu "coerced the plaintiff into signing a 'voluntary request' form on pain of immediate firing." (*Id.* ¶ 35.) The "voluntary request" "falsely stated that plaintiff sought a down-grade to his employment." (*Id.*) During the EEOC's investigation into Plaintiff's allegations, Defendant produced the voluntary request "claiming that it demonstrated that plaintiff . . . initiated the down-grade in his employment, although this was knowingly false." (*Id.* ¶ 36.)

Also on May 9, 2015, Manu "again denigrated and persisted in her many attempts to humiliate and embarrass plaintiff because of his religion" by "fault[ing] him for actions of Biblical characters, demand[ing] to know if his father was Jewish and . . . demand[ing] to know if his mother was Jewish." (*Id.* ¶ 37.) On June 3, 2015, another employee, Mohamed Fadl, "insulted and intimidated plaintiff, got in his personal space, pushed him and punched him in the shoulder."

2

(*Id.* ¶ 38.) On June 24, 2015, Fadl "grabbed plaintiff by the arm, blocked his way and held onto him strongly, immobilizing plaintiff's ability to walk away, intimidating him." (*Id.* ¶ 39.) Plaintiff reported these instances to Manu and to Defendant's ethics hotline, but Defendant took no corrective action. (*Id.* ¶¶ 40–41.) Defendant also "failed to protect plaintiff during a riot in Baltimore, which was aimed at pharmacies, but defendant protected other employees." (*Id.* ¶ 43.)

Defendant also "instituted a pretextual 'coaching' and a pretextual 'write-up' against plaintiff." (*Id.* ¶ 44.) "Defendant disciplined plaintiff for errors he *didn't* commit and failed to discipline similarly-situated, non-Jewish employees . . . for errors they *did* commit." (*Id.* ¶ 46 (emphasis in original).) Defendant also "placed blame on plaintiff for another employee's mistake . . . and disclosed the false allegation to others and demanded – and informed plaintiff's co-workers of the wrongful demand – that plaintiff write a 'root cause analysis' for a stale 'prescription event' although defendant knew and defendant's documents corroborated that the mistake had nothing to do with plaintiff." (*Id.* ¶ 47.) Plaintiff registered an internal complaint with Human Resources and requested a transfer. (*Id.* ¶¶ 49–50.) Defendant did not transfer Plaintiff. (*Id.* ¶ 51.)

On September 16, 2015, after Plaintiff "return[ed] from a religious observance," Plaintiff was terminated. (*Id.* ¶ 52.)

Plaintiff also alleges that the above-described acts were in contravention of a Consent Decree entered in another case in this Court. (*Id.* ¶ 56.) Plaintiff alleges that the Consent Decree enjoined Defendant from "the actions of religious employment discrimination against this plaintiff." (*Id.* ¶ 57.)

On the basis of these allegations, Plaintiff brings the following claims: Violation of Title VII, Employment Discrimination (Count One); Violation of Maryland Anti-Discrimination Laws (Count Two); Illegal Discrimination in Bad Faith in Violation of Pending Injunction (Count Three); Intentional Infliction of Emotional Distress (Count Four); and Defamation (Count Five).

## II. Legal Standard

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. Analysis

Defendant's Motion to Dismiss seeks the dismissal of the following claims: Illegal Discrimination in Bad Faith in Violation of Pending Injunction (Count Three); Intentional Infliction of Emotional Distress (Count Four); and Defamation (Count Five). (ECF No. 5.) Defendant's Motion will be granted.

### A. Illegal Discrimination in Bad Faith in Violation of Pending Injunction (Count Three)

With respect to Count Three, Illegal Discrimination in Bad Faith in Violation of Pending Injunction, Defendant argues that there is no private cause of action for such a claim. Plaintiff's claim is based upon a Consent Decree entered in *E.E.O.C. v. Wal-Mart Stores East, LP*, Civ. No. TDC-13-02655. The Decree relates to litigation involving an individual named Ebrima Jallow, and resolves "all issues and claims in the Complaint filed by the Commission in this Title VII

4

action which emanate from the Charge of Discrimination filed by Mr. Jallow," and provides that Defendant is enjoined from discriminating against any person on the basis of religion or national origin. (*See generally* ECF No. 5-2.)

To the extent Plaintiff seeks to bring some form of breach of contract claim, he fails to allege the existence of any contract between himself and Defendant. Plaintiff was plainly not a party to the Consent Decree. To the extent Plaintiff seeks to bring some form of civil contempt claim, he likewise fails. Indeed, "[t]o establish civil contempt, each of the following elements must be shown by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (citation and alterations omitted). Nothing in the Consent Decree reflects that it was in Plaintiff's favor. Further, it is well-settled that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975). Count Three will be dismissed with prejudice.

### B. Intentional Infliction of Emotional Distress (Count Four)

With respect to Count Four, Intentional Infliction of Emotional Distress, Defendant argues that the claim is time-barred.[1] This claim will also be dismissed with prejudice.

The statute of limitations for an intentional infliction of emotional distress ("IIED") claim is three years from accrual. *Hayes v. Md. Transit Admin.*, 708 F. Supp. 3d 683, 693 (D. Md. 2023),

---

[1] Defendant also argues that Plaintiff fails to state a claim. Because the Court finds that the claim must be dismissed on statute of limitations grounds, the Court does not address whether Plaintiff has failed to state a claim.

5

*aff'd*, No. 24-1482, 2024 WL 4262786 (4th Cir. Sept. 23, 2024). Given that Plaintiff was terminated in September 2015, any events relating to his claim of emotional distress occurred over nine years before he filed suit. His IIED claim is therefore barred by the statute of limitations.[2]

### C. Defamation (Count Five)

With respect to Count Five, Defamation, Defendant likewise argues that the claim is time-barred.[3] This claim will also be dismissed with prejudice.

The statute of limitations for a defamation claim is one year from accrual. *See Johnson v. MV Transp. Inc.*, 716 F. Supp. 2d 410, 413–14 (D. Md. 2010) ("A cause of action for defamation generally accrues upon the publication of the defamatory material."); Md. Code Ann., Cts. & Jud. Proc. § 5-105 ("An action for assault, libel, or slander shall be filed within one year from the date it accrues."). Like his claim for IIED, given that Plaintiff was terminated in September 2015, any events relating to his defamation claim occurred over nine years before he filed suit. This claim is therefore barred by the statute of limitations.

### *IV.  Motion for Leave to File Surreply*

Plaintiff has also filed a Motion for Leave to File Surreply. (ECF No. 10.) The Motion

---

[2] Plaintiff makes a convoluted argument regarding this Court's supplemental jurisdiction over his state-law claims. The Court of course has supplemental jurisdiction over Plaintiff's state-law claims, but such jurisdiction does not somehow—as Plaintiff seems to suggest—excuse Plaintiff's untimeliness. Further, Plaintiff argues that his state-law claims are subject to equitable tolling, given that he was pursuing his administrative remedies before the EEOC with respect to his Title VII claim, as he is required to do. However, while his Title VII claim is subject to administrative exhaustion requirements, his somewhat related state-law claims are not, and his pursual of his Title VII claim before an administrative agency does not toll the statute of limitations with respect to his state-law claims. *McNeal v. Montgomery Cnty., Md.*, 307 F. App'x 766, 772 (4th Cir. 2009) ("McNeal's claims for constructive discharge, tortious interference with contract and intentional infliction of emotional distress, although arising from the same set of circumstances, are completely independent from his Title VII claims. Thus the time for filing a lawsuit as to these causes of action was not tolled while McNeal pursued his Title VII administrative remedies."); *Wimbush v. Kaiser Found. Health Plan of the Mid Atl. States, Inc.*, Civ. No. TDC-14-0525, 2015 WL 2090654, at *8 (D. Md. May 4, 2015) ("[A]ny time [Plaintiff] spent pursuing administrative remedies for her Title VII claims does not toll the statute of limitations for her related but separate claims.").

[3] Defendant again also argues that Plaintiff fails to state a claim. Because the Court finds that the claim must be dismissed on statute of limitations grounds, the Court does not address whether Plaintiff has failed to state a claim.

will be granted. Nothing in the surreply changes the Court's above analysis.

## V. Conclusion

For the forgoing reasons, it is ORDERED that:

1. Defendant's Motion to Dismiss (ECF No. 5) is GRANTED and Counts Three, Four, and Five are DISMISSED WITH PREJUDICE.

2. Plaintiff's Motion for Leave to File Surreply (ECF No. 10) is GRANTED.

DATED this 5 day of June, 2025.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
United States District Judge